NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| REBECCA PANITCH, by way of her *Guardian Ad Litem*, RICHARD PANITCH, | |
| Plaintiff, | Civil Action No. 06-3611 (JAG) |
| v. | OPINION |
| CONTINENTAL AIRLINES, JOHN and/or JANE DOES, 1-50 (names being fictitious and unknown), ABC COMPANIES, 1-50 (names being fictitious and unknown), | |
| Defendants. | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on Defendant Continental Airlines' ("Defendant" or "Continental") motion for summary judgment, and Plaintiff Rebecca Panitch's ("Plaintiff") cross-motion for summary judgment, both are made pursuant to FED. R. CIV. P. 56. For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

**I. PROCEDURAL HISTORY**

On June 26, 2006 Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. §§ 10:5-1 to -49, and New Jersey common law, for Continental's alleged failure to provide reasonable accommodations for Plaintiff's severe nut allergy during a flight from New

Jersey to the Bahamas.  (See generally, Compl.)  Specifically, Plaintiff alleged three claims: (1) handicap discrimination, pursuant to the NJLAD; (2) aiding and abetting, pursuant to the NJLAD; and (3) intentional and negligent infliction of emotional distress.  (Id.)  Defendant removed the action to this Court on August 3, 2006.  (See generally, Notice of Removal.)

On February 22, 2007, Plaintiff filed an Amended Complaint alleging the same claims, but with respect to Plaintiff's attempted travel on a Continental flight from New Jersey to Florida.  (See generally, Am. Compl.)  Defendant moved for summary judgment on June 28, 2007, and argued that each of Plaintiff's claims were preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713, and that Plaintiff's claims for intentional and negligent infliction of emotional distress also fail as a matter of law.  (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") 5-17.)

Plaintiff then filed her opposition to Defendant's motion, and filed a cross-motion for summary judgment on August 24, 2007.  (See generally, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Opp'n and Cross-Mot.").)  Plaintiff argued, inter alia, that her claims were not preempted by federal law, and that summary judgment is appropriate on the issue of Defendant's liability only, because Plaintiff made out a prima facie case of discrimination based on disability, pursuant to the NJLAD.  (See generally, Pl.'s Opp'n and Cross-Mot.)

## II.  FACTUAL BACKGROUND

Plaintiff is a teenage female with a severe peanut and tree nut allergy.[1]  (Pl.'s Counter-

---

[1] "Allergies to peanuts and tree nuts are a severe and life threatening disability that patients such as Rebecca have to deal with 'day in and day out' in their lives.  It is not a condition that subsides one day and comes back another.  It is a constant, life threatening medical condition

Statement of Material Facts ("Pl.'s SMF") ¶ 1; see also Zuckerman Certif. at ¶ 2.)  In October 2006, Plaintiff's father called Continental's airline reservation number to make reservations for Plaintiff to travel from Newark, New Jersey to Orlando, Florida in December 2006.  (Id. at ¶ 2; see also Def.'s Statement of Material Facts ("Def.'s SMF") ¶ 2.)  Plaintiff's father requested that "no nuts be served on [Plaintiff's] flight and/or [that Continental] creat[e] [] a buffer zone."  (Id.; see also Def.'s SMF at ¶ 2.)

"In accordance with the Airport Services Bulletin for Customer Services, Continental Airlines does not offer peanut free zones and will not remove pre-packaged peanuts from its meal and beverage services."  (Def.'s SMF at ¶ 3.)  Therefore, "[D]efendant refused to provide accommodations to the plaintiff."[2]  (Pl.'s SMF at ¶ 2.)  "Plaintiff did not make any reservations and/or purchase any tickets from Continental Airlines for travel to Florida in December of 2006, nor did she or her parents seek to purchase tickets through another air carrier."  (Def.'s SMF at ¶ 5; see also Pl.'s SMF at ¶ 3.)  Similarly, "Plaintiff did not seek any medical treatment with regard

---

and disability. . . . For a severely allergic person such as Rebecca, mere microgram quantities of peanuts, tree nuts or nut particles may be sufficient to induce a reaction.  Exposure through consumption, contact, or inhalation of nut particles can trigger an allergic reaction. . . . Persons such as Rebecca who have this disability are particularly at risk when traveling on an airplane.  This risk has been discussed and documented in medical literature.  During food service on an airplane, a significant number of passengers open pressurized bags of nuts in a close temporal time frame in the airplane cabin which recirculates air.  As a result, the cabin air of the plane gets filled with nut particles and nut particles may also coat the seats.  Moreover, during air travel, appropriate emergency care is not available."  (Certification of Gary Zuckerman ("Zuckerman Certif.") ¶¶ 4, 6, 8.)

[2] In 2004, Plaintiff's father made a similar request of Continental.  Plaintiff's doctor and Senator Lautenberg also wrote letters on Plaintiff's behalf, requesting that Continental refrain from serving nuts on Plaintiff's flight.  (Pl.'s SMF at ¶¶ 6-7; see also Certification of Carolyn Frome ("Frome Certif.") Ex. I.)  In response to these earlier requests, Continental "previously informed [P]laintiff's father of its service policy regarding peanuts by letter dated August 6, 2004."  (Def's SMF at ¶ 4; see also Frome Certif. Ex. G.)

to her alleged emotional distress claims and has not supplied expert reports which identify any injury allegedly sustained." (Id. at ¶ 6; see also Pl.'s Resp. to Def.'s Interrogs. ## 3-4.)

Plaintiff also claims, and Defendant denies, that the requested accommodations were reasonable because "by their nature [they] would not have cost the defendant any money whatsoever as no alternative foods were requested." (Pl.'s SMF at ¶¶ 4, 9.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [it] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331). See also United States v. Four Parcels of Real Prop., 941

4

F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.") (emphasis in original) (internal citations omitted).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations, and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

"Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial. . . . [T]here can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

## IV.  DISCUSSION

### A.  NJLAD Claims for Handicap Discrimination and Aiding and Abetting

Defendant Continental argues that Plaintiff's statutory claims, pursuant to the NJLAD, for handicap discrimination, and aiding and abetting, are preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1).

> Preemption can be either express or implied.  Express preemption arises when "a federal statute expressly directs that state law be ousted."  Implied preemption arises when, "in the absence of explicit statutory language, . . . Congress intended the Federal Government to occupy [a field] exclusively," or when state law "actually conflicts with federal law."

Air Transp. Ass'n of Am., Inc. v. Cuomo, No. 07-5771, 2008 U.S. App. LEXIS 6130, *5 (2d Cir. Mar. 25, 2008) (internal citations omitted).

> Congress included an express preemption provision in the ADA, which states that
>
> [e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law <u>related to a price, route, or service</u> of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added).  Therefore, Plaintiff's NJLAD claims are preempted if they are "related to a price, route, or service." Id.

In Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), the Supreme Court of the United States adopted a broad interpretation of the ADA's preemption provision.  The Court began its analysis of the reach of this provision by defining the phrase "relating to." Id. at 382.

Stating that "[t]he ordinary meaning of these words is a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' – [the Court reasoned that] the words thus express a broad pre-emptive purpose." Id. (internal citation omitted). Therefore,

> the Court determined: (1) that "state enforcement actions *having connection with, or reference to*" carrier "rates, routes, or services are pre-empted," (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect,"³ (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' de-regulatory and pre-emption related objectives.

Rowe v. N.H. Motor Transp. Ass'n, 128 S. Ct. 989, 995 (2008) (citing Morales, 504 U.S. at 384, 386-87, 390) (emphasis added).

Although the Supreme Court applies a broad interpretation to the scope of this preemption provision, it has yet to enunciate a definition for "service". Nw. Airlines, Inc. v. Duncan, 531 U.S. 1058, 1058 (2000) (O'Connor, J., dissenting to denial of cert.). "The Courts of Appeals, however, have taken [two] directly conflicting positions on this question of statutory interpretation." Id. (citing cases illustrating circuit split).

The first view was advanced by the Ninth Circuit, and construes "service" narrowly. Id. (citing Duncan v. Nw. Airlines, Inc., 208 F.3d 1112, 1114-15 (9th Cir. 2000) (quoting Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1261 (9th Cir. 1998) (the term service encompasses

---

³ The Supreme Court rejected the petitioner's argument "that only state laws specifically addressed to the airline industry are pre-empted, [and that] the ADA imposes no constraints on laws of general applicability." Morales, 504 U.S. at 386. The Court stated that, "besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable as long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the 'relating to' language." Id.

7

"'the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail,'" but not the "'provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.'"))). The second view, on the other hand, defines "service" much more broadly, and includes "'contractual features of air transportation,' including 'ticketing, boarding procedures, provision of food and drink, and baggage handling.'" Id. (quoting Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995)).

"A majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink – matters incidental to and distinct from the actual transportation of passengers." Air Transport Ass'n of Am., 2008 U.S. App. LEXIS 6130, at *11 (citing cases decided by the First, Fourth, Fifth, Seventh, and Eleventh Circuits adopting the broader definition of "service").

The Ninth Circuit's definition has not been so widely embraced. Justice O'Connor, however, interpreted the Third Circuit's decision in Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186 (3d Cir. 1998) as expressly adopting the Ninth Circuit's definition of "service". Nw. Airlines, Inc. v. Duncan, 531 U.S. 1058, 1058 (2000) (O'Connor, J., dissenting to denial of cert.). This Court does not agree with Justice O'Connor's reading of Taj Mahal. This Court interprets the Third Circuit's recitation of the disagreement among the circuits, and its ultimate holding that the ADA's preemption provision does not preempt all state tort claims, as adopting the Ninth Circuit's reasoning, only insofar as it limits the extension of the preemption provision to all state common law causes of action, and in particular to personal injury claims. See Taj

8

Mahal Travel, Inc., 164 F.3d at 194 ("We agree with those Courts that have found that the continued existence of statutorily mandated liability insurance coverage is strong evidence that Congress did not intend to preempt state tort claims. It would make little sense to require insurance to pay for bodily injury claims if airlines were insulated from such suits by the preemption provision."). This Court does not interpret the Third Circuit as expressly adopting the Ninth Circuit's definition of "service". Therefore, this Court follows the reasoning of the First, Second, Fourth, Fifth, Seventh, and Eleventh Circuits, and adopts a broad definition of "service".

Applying this definition to the case sub judice, this Court finds that Plaintiff's claims, pursuant to the NJLAD, are preempted because the claims relate to a service. As explained above, this Court interprets the term "service" as including "[e]lements of the air carrier service bargain includ[ing] . . . provision of food and drink. . . ." Hodges, 44 F.3d at 336.

Plaintiff's claims pertain specifically to Continental's in-flight provision of meals and snacks. In fact, Plaintiff's explicit request of Defendant was to modify its service of a particular snack. (See Pl.'s SMF ¶ 2 (stating that Plaintiff's father requested that "no nuts be served on [Plaintiff's] flight and/or [that Continental] creat[e] [] a buffer zone."); see also Def.'s SMF at ¶ 2.) This request and Continental's refusal to permit such an accommodation form the basis of Plaintiff's Complaint. Therefore, because the provision of food and drink constitutes a service provided by Continental, Plaintiff's claims for handicap discrimination, and aiding and abetting, pursuant to the NJLAD, are preempted. See Air Transport Ass'n of Am., 2008 U.S. App. LEXIS 6130 (holding that the New York State Passenger Bill of Rights, which requires, among other things, the provision of food and water during lengthy ground delays, is expressly preempted by

9

the ADA).

## B. Intentional and Negligent Infliction of Emotional Distress Claims

This Court reaches the same conclusion with respect to Plaintiff's common law claims for intentional and negligent infliction of emotional distress.

The Supreme Court's decision in Morales adopted a broad interpretation of the ADA's preemption provision. However, that decision, "does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA. Instead, we must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes, or services." Travel All Over The World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996).

As noted above, the underlying facts of this case relate specifically to Continental's food and snack service. The provision of food and beverage to in-flight customers is clearly a "service" within the meaning of the ADA's preemption provision. Air Transp. Ass'n of Am., Inc., 2008 U.S. App. LEXIS 6130, at *11. Therefore, Plaintiff's intentional and negligent infliction of emotional distress claims are preempted. DeTerra v. Am. W. Airlines, Inc., 226 F. Supp. 2d 274, 277 (D. Mass. 2002) (entering judgment in favor of airline on plaintiff's intentional infliction of emotional distress claim).[4]

---

[4] This Court must note that, although the Third Circuit states in dicta that "Congress did not intend to preempt state tort claims[,]" Taj Mahal Travel, Inc., 164 F.3d at 194, the facts of that case are distinguishable from the case before this Court. First, when discussing the scope of the ADA's preemption provision, the Third Circuit focused on primarily physical injury cases. The Circuit reasoned that the mandate of insurance coverage implied Congress' intent to exempt common law claims for death or personal injuries. Id. That is not the type of common law claim before this Court. Second, the Third Circuit ultimately held that the plaintiff's defamation claim was not preempted because it was "'too tenuous, remote, or peripheral' to be subject to preemption." Id. at 195. The Circuit's conclusion on that claim is also unlike the facts before

Even if Plaintiff's common law claims for intentional and negligent infliction of emotional distress are not preempted, summary judgment in favor of Defendant is still warranted. Plaintiff has not met her burden of proof.

"In order for plaintiff to prevail on an intentional infliction of emotional distress claim, [s]he must show: (1) intentional conduct; (2) the conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was severe." DeAngelis v. Hill, 847 A.2d 1261, 1272 (N.J. 2004) (citing Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988)).  In addition, Plaintiff must prove actual malice. Id. Plaintiff cannot prove that Continental's conduct was extreme and outrageous, or that her distress was severe.

First, Plaintiff cannot prove that by denying Plaintiff's request for an accommodation, Continental's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d.  In fact, the evidence suggests that Defendant acted reasonably, and in compliance with its existing procedures relating to the service of peanuts.  (Frome Certif. Ex. F.); see also Hingson v. Pac. Sw. Airlines, 743 F.2d 1408 (9th Cir. 1984) (holding that although the plaintiff's claim for intentional infliction of emotional distress was not preempted by federal law, directed verdict for the airline was appropriate because the plaintiff failed to prove that the airline's conduct was outrageous, an essential element for a cause of action for intentional infliction of emotional distress).

---

this Court.  As stated above, Plaintiff's entire Complaint rests on Continental's food and beverage service, which constitutes a service under the ADA's preemption provision.

Second, Plaintiff has failed to prove that she suffered severe distress.[5]  "Plaintiff did not seek any medical treatment with regard to her alleged emotional distress claims and has not supplied expert reports which identify any injury allegedly sustained." (Def.'s SMF at ¶ 6; see also Pl.'s Resp. To Def.'s Interrogs. ## 3-4.)  Rather, the facts indicate that Plaintiff, if she suffered any distress, did not suffer the degree of distress required.  DeAngelis, 847 A.2d at 1272 ("[P]laintiff's proof of emotional distress was limited to testimony that he was embarrassed, stressed, lost sleep, and subjected to practical jokes by fellow officers.  Plaintiff did not seek medical or psychological treatment, nor did he suggest that the incident seriously affected his relationship with coworkers or prevented him from performing his job or other daily routines.  We have recognized previously that such general maladies do not rise to the level of severe distress required in an emotional distress claim.").  Therefore, judgment in favor of Defendant is required.

Similarly, Plaintiff has failed to establish the requisite proof to state a claim for negligent infliction of emotional distress.  The New Jersey Supreme Court has held that

> where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright. Of course, where fright does not cause *substantial* bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability.

---

[5] Plaintiff claims that "[t]he fact that [she] did not actively see a psychiatrist on this issue did not mean that [she] did not suffer from emotional distress."  (Pl.'s Opp'n and Cross-Mot. 20.) Plaintiff also claims that "at the damages portion of this case, [she] intends to produce testimony as to emotional distress . . . . " (Id.)  However, "unsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch, 912 F.2d at 657.  Plaintiff must "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); see also Anderson, 477 U.S. at 248; Siegel Transfer, Inc., 54 F.3d at 1130-31.

Falzone v. Busch, 214 A.2d 12, 17 (N.J. 1965) (emphasis added); see also Restatement (Second) of Torts § 436A ("If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."). Therefore, Plaintiff must show that she suffered substantial bodily injury or sickness. Id.

Plaintiff, as above, has failed to meet her burden. The record is devoid of any facts indicating that Plaintiff sustained any injury, or received medical attention for an injury or illness. (Def.'s SMF at ¶ 6; see also Pl.'s Resp. To Def.'s Interrogs. ## 3-4.) Accordingly, Defendant is entitled to summary judgment.

## V. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, pursuant to FED. R. CIV. P. 56, is granted on all counts of Plaintiff's Complaint. Judgment is entered in favor of Defendant on Plaintiff's statutory claims, pursuant to the New Jersey Law Against Discrimination, N.J. STAT. ANN. §§ 10:5-1 to -49, for handicap discrimination, and aiding and abetting; and Plaintiff's common law claims for intentional and negligent infliction of emotional distress. Plaintiff's cross-motion for summary judgment, pursuant to FED. R. CIV. P. 56, is therefore, denied.

Date: March 31, 2008

    S/Joseph A. Greenaway, Jr.
    JOSEPH A. GREENAWAY, JR., U.S.D.J.